**WASHITA VALLEY GRAIN CO. v. McELROY.**

No. 35021.

Supreme Court of Oklahoma.

Sept. 29, 1953.

Rehearing Denied Oct. 20, 1953.

Looney, Watts, Ross, Looney & Smith, Oklahoma City, for plaintiff in error.

Hemry & Hemry, Oklahoma City, Bill Wilson, Pauls Valley, for defendant in error.

HALLEY, Chief Justice.

This is an action for damages for personal injuries and special damages alleged to have been sustained by the plaintiff, Franklin D. McElroy, when the car he was driving in an easterly direction along Highway 19 a short distance east of Maysville, struck the right rear corner of the bed of a truck traveling in the same direction and owned and operated by Washita Valley Grain Company. The truck had started to make a left turn off of the paved Highway 19 as plaintiff started to pass it by using the left side of the paved road.

Plaintiff alleged negligence on the part of truck driver in driving upon the highway without a properly equipped truck and in failing to give proper signals for a left turn. The defendant alleged contributory negligence on the part of plaintiff in driving at an excessive rate of speed and in failing to give warning of his intention to pass the truck by sounding his horn.

The jury returned a verdict for plaintiff for $10,000 and judgment was entered for that amount. The Washita Valley Grain Company has appealed. The parties will be referred to as they appeared in the trial court.

Since the two errors relied upon for reversal involved the admission of certain testimony, and no claim is made that the damages awarded are excessive, if plaintiff was entitled to recover any amount, we find it unnecessary to review the evidence fully. We have examined all of the testimony and numerous exhibits but think that a brief statements of the evidence will be sufficient to enable us to present clearly the two propositions submitted. The two propositions submitted are as follows:

"Proposition One: The trial court erred in admitting opinion evidence by the witness, Snyder, that the plaintiff was not guilty of contributory negligence, and fixing the point of impact from study of photographs, charts and statements of witnesses as related to him by plaintiff's counsel.

"Proposition Two: The trial court erred in permitting the witness, Mizer, to testify that plaintiff did sound his horn upon passing him at a point three-fourths mile before the accident."

There is some confliction in the evidence as to the exact spot where the collision of plaintiff's car and defendant's truck occurred, but it fairly appears that the impact occurred about 200 feet west of where a dirt road turns north off the paved highway, through a railroad underpass, and that the truck had started to make a left turn onto this dirt road as plaintiff started to pass the truck to its left. Upon discovering that the truck was starting to make a left turn the plaintiff appears to have turned

sharply to his right and the left side of his car struck the right rear corner of the truck bed and inflicted heavy damage upon the car and serious injuries to the plaintiff. The right rear signal light of the truck was damaged and both car and truck proceeded to the point where the dirt road intersected the highway from the north. The plaintiff was rendered unconscious for several days and was unable to give any accurate account of the accident.

The evidence is in conflict as to speed at which plaintiff was driving and upon the questions of whether plaintiff sounded his horn as to his intentions to pass the truck and as to whether or not the truck was properly equipped and a signal given for a left turn. The medical testimony was such as to sustain the judgment as to the injuries inflicted upon the plaintiff. Many photographs of the car, truck, and highway were introduced and an accurate survey of the ground was made by a surveyor and the exhibits showed distances and skid marks at and near the scene of the accident.

A qualified safety engineer, Ralph H. Snyder, examined all of the documentary evidence and was advised on many facts and circumstances by one of the attorneys for plaintiff. He was called as a witness to give expert testimony, which was admitted over the objections of the defendant, and that expert testimony as to the lack of negligence on the part of the plaintiff forms the basis of the first proposition above set out.

The second proposition arose when the court permitted the witness L. T. Mizer to testify over the objection of the defendant that about three-fourths of a mile back of defendant's truck he was driving in the same direction when plaintiff passed him and honked his horn as a warning of his intention to pass.

Defendant contended that the admission of the expert testimony of the witness, Snyder, that under the evidence and facts submitted to him, it was his opinion that plaintiff was not guilty of contributory negligence was error.

■ The rule has long been established that what does or does not constitute negligence under a given state of facts and circumstances lies within the exclusive province of the court or jury to whom the question is submitted. When the question is submitted to the jury its determination lies exclusively within the province of the jury under proper instructions by the court as to applicable law.

The plaintiff contends that the evidence shows that defendant's negligence caused the accident; that there is no convincing proof of contributory negligence on the part of plaintiff; that the witness, Snyder, was an expert in safety engineering and that there was no error in permitting him to give an opinion as to whether plaintiff was guilty of negligence; that there was no error in permitting the witness, Mizer, to testify that plaintiff passed him about three-fourths of a mile east of the place of the accident and gave a signal of his intention to pass by sounding his horn.

Plaintiff's expert witness, Ralph H. Snyder, as to whose qualifications there is no question, stated he had not witnessed the accident but based his conclusions on photographs and various exhibits including measurements by the county surveyors and scaled drawings made by himself. He also stated that he based his conclusions in regard to negligence on the part of the plaintiff partly on statements made to him by one of plaintiff's attorneys and that he based his opinion as to negligence on all of the factors entering into the picture of the accident, including skid marks shown by the photographs and measurements of the highway; pictures of the car and truck and facts stated to him by one of plaintiff's attorneys and upon the assumption that plaintiff gave a horn signal of his intention to pass the truck. A pertinent portion of Mr. Snyder's testimony is as follows:

"Q. From your examination as an expert, do you see any negligence on the part of the driver of the McElroy car in this case? A. I can't see where he was negligent in any place, and as stated from the evidence presented to me, in other words, I cannot see where he was negligent in any place at all, from the evidence present-

ed to me, for this reason, at a distance of approximately two hundred feet from that intersection, or intersecting road, it is very evident Mr. McElroy came to the left side of the road to pass and that would be a safe place to pass on an open stretch of highway, and there is no evidence which I have been able to see where he was exceeding the speed limit, and a car desiring to pass on a highway, that is a safe place to pass. * * *" (C.-M. 193)

### Cross-examination

"Q. Then plus what Mr. Hemry told you about the accident, you have concluded from these pictures, you worked on these pictures and measurements, plus Mr. Hemry's statement of what happened, you have concluded and testified today Mr. McElroy was free from negligence in this case? A. Yes, sir." (C.-M. 196)

"Q. Now you have testified from your investigation of the case, your opinion is that Mr. McElroy was not negligent? A. Yes, sir. * * *" (C.-M. 199)

"A. My opinion, based on the fact Mr. McElroy was not in any way negligent, as stated before, was made from all the evidence and factors I could find out as to the case, and it was my understanding he signalled when he went around Mr. Mizer, when he passed his car back up the road. There was no evidence he made any signals at the time he started around the truck, but it has been my experience that habit is a big factor in drivers driving a car. We have a test like a moving picture, and only experienced drivers, when they see a car or truck come out, they are in the habit of signalling or stopping and they will do that during the test, and from the basis of the evidence presented to me, it was very evident that Mr. McElroy would signal."

"Q. You are assuming that Mr. Mc-Elroy sounded his horn? A. Yes, sir, you have to, if you don't assume that,

you can't assume Mr. McElroy was not negligent." (C.-M. 200)

■■ Was it error to allow this witness to express an opinion on whether or not plaintiff was guilty of contributory negligence? The general rule is aptly expressed in Note 5: 20 Am.Jur. 634, Sec. 765:

"General Rule of Exclusion. It is a fundamental principle of the law of evidence as administrated by our courts, both in civil and criminal cases, that the testimony of witnesses upon matters within the scope of the common knowledge and experience of mankind, given upon the trial of a cause, must be confined to statements of concrete facts within their own observation, knowledge, and recollection—that is, facts perceived by the use of their own senses—as distinguished from their opinions, inferences, impressions, and conclusions drawn from such facts. Generally speaking, the opinion or conclusion of a witness upon a fact or facts in issue is incompetent and inadmissible, although there are exceptions to this rule as well settled as is the rule itself, where the issues involve facts and matters calling for special skill and study or where the facts in controversy are incapable of being detailed and described so as to give the jury an intelligible understanding concerning them." * * *

In Chicago, R. I. & P. Ry. Co. v. Stibbs, 17 Okl. 97, 87 P. 293, this Court said in the first syllabus:

"It is not error for the court to strike from a deposition, or exclude from the testimony of a witness, any statement or answer which is merely a supposed inference or conclusion of the witness drawn from a given state of facts."

In Hadley v. Ross, 195 Okl. 89, 154 P.2d 939, it was held that a highway patrol report was not admissible in evidence because it contained conclusions of the maker and was based partly upon hearsay. In the second syllabus it was said:

"Expressions of opinion or conclusions purporting to determine cause

and effect or expressions involving the exercise of judgment and discretion contained in records of investigations conducted by public officers, either voluntarily or pursuant to requirement of law, are inadmissible in evidence in a negligence action."

And in the opinion, 154 P.2d at page 942, the Court said:

"If the officer who made the report in question had been present at the trial he could not have testified to any of the facts disclosed by the report because he had no personal knowledge thereof. His opinions and conclusions expressed in the report purport to determine the cause of the collision. To permit this would amount to a direct invasion of the province of the jury. All the facts disclosed by the public document introduced in this case were based entirely upon hearsay as disclosed on the face of the report and the report was inadmissible."

In Federal Oil & Gas Co. v. Campbell, 65 Okl. 49, 183 P. 894, 897, it was said:

" * * * Where the facts can be placed before a jury, and they are of such a nature that jurors generally are just as competent to form opinions in reference to them and draw inferences from them as witnesses, then there is no occasion to resort to expert or opinion evidence. To require the exclusion of such evidence, it is not needed that the jurors should be able to see the facts as they appear to eyewitnesses or to be as capable to draw conclusions from them as some witnesses might be, but it is sufficient that the facts can be presented in such a manner that jurors of ordinary intelligence and experience in the affairs of life can appreciate them, can base intelligent judgments upon them, and comprehend them sufficiently for the ordinary administration of justice. The rules admitting the opinions of experts should not be unnecessarily extended. Experience has shown that it is much safer to confine the testimony of witnesses to facts in all cases where that is practicable and leave the jury to exercise their judgment and experience upon the facts proved. Where witnesses testify to facts they may be specifically contradicted, and if they testify falsely they are liable to punishment for perjury. But they may give false opinions without the fear of punishment. It is generally safer to take the judgments of unskilled jurors than the opinions of hired and generally biased experts."

The most recent case decided by this Court on May 5, 1953, is Maben v. Lee, Okl.Sup., 260 P.2d 1064, 1066. In that case the defendant relied upon contributory negligence of the plaintiff. The action arose out of an automobile collision similar to that involved in the case before us. The court admitted the testimony of a highway patrolman who investigated the case shortly after the accident, in which he stated in part "that the accident was caused by defendant, who attempted to pass at an intersection and was unable to stop in the assured, clear distance ahead", and further that there is a definite duty on a vehicle traveling in front and from his investigation determined "there was no proof [that] he (plaintiff Lee) did not comply with it." We held that the admission of such testimony was reversible error. The law laid down in that case fully covers the case at bar.

In the Maben case the highway patrolman had gained his information on which he based his opinion by an investigation conducted at the scene of the collision about an hour after it occurred. Mr. Snyder, in the present case, based his opinion that plaintiff was not guilty of contributory negligence by an examination of exhibits and from information obtained by talking to one of plaintiff's attorneys long after the accident and admitted that in forming his conclusion that he assumed that the plaintiff sounded his horn as a signal when he started to pass the truck. The information obtained by the witness from one of plaintiff's attorneys was hearsay.

Plaintiff contends that after the court permitted the witness, Snyder, to testify over the objections of the defendant

that the plaintiff was guilty of no negligence, the defendant on cross-examination of the witness questioned him further as to the same expert testimony that the witness had given on direct examination and thereby waived his right to complaint that the expert or opinion testimony complained of was inadmissible. We cannot agree with this contention. In Lee Moor Contracting Co. v. Blanton, 49 Ariz. 130, 65 P.2d 35, on page 41, the Supreme Court of Arizona announced as follows:

"* * * Plaintiff says that even though it was error to admit it, the defendant waived or condoned it by questioning the witness at length upon the same point. As we understand it, the defendant's questioning of the witness was upon his cross-examination. Defendant did not make the witness its own. Such being the case, the defendant lost no right by cross-examining the witness."

We think the rule there announced is correct and conclude that the admission of the expert testimony of the witness Snyder on the ultimate fact of negligence was an invasion of the province of the jury and constituted reversible error. Due to the impressive qualifications of the witness we think the admission of this testimony as to negligence was likely to have impressed and influenced the jury.

We hold that it was also error to permit the witness Mizer to testify that when plaintiff passed him on the highway some three-fourths of a mile back of the point of the accident the plaintiff sounded his horn as a warning of his intention to pass. A single instance of the signaling an intention to pass falls far short of establishing a fixed habit of the plaintiff to always give a warning of his intention to pass a vehicle traveling in the same direction. It has no probative value in respect to what plaintiff did in this regard as he started to pass truck of defendant. Our conclusion on this question is supported by Holberg v. McDonald, 137 Neb. 405, 289 N.

W. 542, 543, wherein this statement is made:

"* * * The reputation of a driver and his conduct at other times and places are not reliable or safe criterions by which to determine what his conduct was at a particular time and place.

"Most automobile drivers operate their vehicles over many thousands of miles without accident and in the presence of the ever-present hazard of other traffic, and yet we are appalled by too many thousands of serious accidents. This situation justifies the conclusion that most motor vehicle accidents chargeable to man-failure are due to lapses from the customary skill and care of the drivers involved. A very poor or careless driver may have been wholly free from fault in the particular instance involved and, likewise, the most skilful driver, accustomed to exercising the utmost care, may be grossly negligent on one particular occasion. In either situation, to hold that the rights and liabilities of the parties should be determined, not solely by what they did, but by their conduct on other occasions and in different situations would put us on a tortious trail—tedious, difficult and expensive to follow, and leading in the end only to intolerable injustice."

The admission of this testimony is further injurious because the expert witness Snyder testified that among the various factors considered by him in arriving at the conclusion that plaintiff was not guilty of negligence was that he assumed plaintiff did sound his horn as he started to pass defendant's truck.

On account of the error above discussed the case is reversed and remanded for a new trial.

JOHNSON, V. C. J., and WELCH, CORN, DAVISON, O'NEAL, and BLACKBIRD, JJ., concur.

ARNOLD, J., dissent.